IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

      Plaintiff,

v.                      No. 2:19-cr-02176-RB-1

JOSEPH MONTES,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Police officers received information about Defendant Joseph Montes and sought to question him regarding his involvement in the drug trade. During this interaction, Montes refused to let officers search a guitar case in his hotel room, so they sought a warrant and eventually seized the case. In a separate Opinion, filed concurrently, the Court grants Montes's Motion to Suppress (Doc. 21). Here, the Court takes up separate motions in that case: Montes's Motion to Disclose Confidential Informants (Doc. 33); Montes's Motion in Limine to Exclude Expert Testimony (Doc. 32); Montes's Motion in Limine to Exclude Evidence of Alleged Drug Paraphernalia (Doc. 35); Montes's Motion in Limine to Exclude The Words "A.K.A. Horse" (Doc. 36); government's Notice of intent to introduce Rule 404 evidence of past criminal activity (Doc. 47); and a Notice related to the government's *Brady* obligations (Doc. 34). The Court will address each in turn.

**I.    Background**[1]

Agent Richard Flores received information about Montes from confidential informants. (Doc. 60 (Tr.) 193:12–23.) In addition, Alex Padilla—the father of Montes's deceased wife— contacted the Silver City Police Department in April 2019 to share information about Montes's

---

[1] The facts are taken from the January 7, 2020 hearing transcript (Doc. 60) and the government's Exhibit 1 (Tavizon's bodycam video of the encounter).

illicit activities. (Tr. 128:15–18.) On May 14, 2019, Flores saw Montes's vehicle at the Gila Mountain Inn (Inn), and outside of the room Montes and another individual were "banging on a metal container" with an unknown substance. (Tr. 132:18–25.)

Sergeant Timothy Tavizon and another officer approached Montes's room. (Tr. 22:3–11.) Montes explained that he and his friend were panning for gold and showed the officers their equipment. (Gov't Ex. 1 at 17:39:05.)[2] Tavizon and Montes then proceeded to discuss his nickname "Horse" and his involvement with drugs. (*Id.* at 17:42:50–17:43:15.) Tavizon then asked for permission to search Montes's vehicle and room. (*Id.* at 17:43:25.) On entering the room, Montes picked up his guitar case and held it out for Tavizon to touch. (*Id.* at 17:48:12.)

Tavizon asked if he could search the entire guitar case, and Montes refused. (*Id.* at 17:48:40.) Tavizon then explained that he would seek a warrant to search the case. (*Id.* at 17:48:35.) The officers explained to Montes that they were going to seize the case until the warrant was granted, and Montes refused. (*Id.* at 17:58:57–17:59:05.) After multiple warnings, the officers arrested Montes for resisting, evading or obstructing an officer. (*Id.* at 18:04:25.) Once the warrant was approved, the officers searched the guitar case and found a crystal-like substance that tested positive for methamphetamine. (Tr. 166:4–8.)

## II. Motion to Disclose Confidential Informants

Montes moved to disclose the identities of confidential informants and any related information that would assist in establishing a defense. (Doc. 33.) The government has the "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957) (citations omitted). Yet the court may require disclosure where the "informer's identity,

---

[2] Given that there are three media files that comprise the entire encounter, the Court cites the time stamp (May 14, 2019 MT) from the bodycam, instead of the time listed on the media file for ease of reference.

or of the contents of his communication, is relevant and helpful to the defense of an accused . . . ." *Id.* at 60–61 (footnote omitted). The Tenth Circuit organizes informant cases into three groups. First, disclosure is not required when the informant "is a mere tipster . . . ." *United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990) (citations omitted). Next, there are cases "where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant." *Id.* (citation omitted). Finally, when the informant plays "a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial[,]" then the court should compel disclosure. *Id.* (citation omitted).

Determining whether to reveal the identity of an informant "involves balancing the public interest in protecting the flow of information in a manner necessary for effective law enforcement against an individual's right to prepare his defense." *United States v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir. 1997) (citation omitted). Specifically, the court "must consider the particular circumstances of the case, including the crime charged, the possible defenses, and the significance of the informer's testimony." *Id.* (citation omitted). When an informant has "nothing relevant to say regarding Defendant's guilt of the charged offense, there [is] no need to question him." *United States v. Long*, 774 F.3d 653, 663 (10th Cir. 2014). Further, "disclosure is not required if the defendant does not make the 'substantial preliminary showing' required by *Franks*." *Id.* at 661 (quoting *United States v. Schauble*, 647 F.2d 113, 117 (10th Cir. 1981)). This requires that a defendant show beyond mere speculation that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . ." *United States v. Williams*, 576 F.3d 1149, 1161 (10th Cir. 2009) (quotation omitted).

Defendant argues that "[t]o prepare for trial, it is critical for Mr. Montes to properly challenge the government's allegations against him. This cannot be accomplished without knowing the informant(s)' identities and other information that would reveal any motives they might have to lie." (Doc. 33 at 2.) As a result, Montes seeks names, occupations, any compensation received, informants' "experience with firearms," psychiatric history, and other information. (*Id.* at 3.) Montes contends that his "right to prepare his defense outweighs the government's interest in keeping the informant(s)' identities confidential." (*Id.* at 5.) The government nevertheless posits that "the confidential sources' involvement in this case is at the tipster end of the *Roviaro* spectrum . . . ." (Doc. 43 at 9.) The informants were not involved in the crime, and a "compelling need exists to protect the identities of the confidential sources." (*Id.* at 11.)

It is difficult to imagine specifically what sort of constructive information the informants could provide or how Montes could use it to mount a defense. When the officers receive informant information without their physical presence at the scene, the informants squarely fall into the tipster category. There is no indication from either party that the informants played any role in the events of May 14, 2019. Moreover, revealing informant identities could negatively affect the future flow of information to law enforcement officers. Thus, informant confidentiality outweighs any perceived benefit Montes would receive, and the Court will deny Montes's Motion to Disclose.

**III.   Motions in Limine**

Next, Montes seeks to prevent the government from introducing physical evidence at trial through three Motions in Limine: (i) to exclude expert testimony from Special Agent Timothy Pearse/Daniel Ortiz and chemist Richard Andrew Butler (Doc. 32); (ii) to exclude evidence of

alleged drug paraphernalia, gambling receipts, lists of names, and other items (Doc. 35); and to exclude use of the nickname "Horse" (Doc. 36).

### a. Motion to Exclude Expert Testimony of Special Agent Timothy Pearse/Daniel Ortiz and Richard Andrew Barber.

Federal Rule of Evidence 702 allows for expert opinion testimony if certain criteria are met. This includes the following:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods of the facts of the case.

Fed. R. Evid. 702. The Supreme Court held that district courts must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The court must determine whether the expert is qualified and that the opinion is reliable. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). In addition, the theory must be testable; subject to peer review; include error rates; and accepted in the scientific community. *See Daubert*, 509 U.S. at 593–94.

### i. Timothy Pearse/Daniel Ortiz.

At issue is whether Special Agent for Homeland Security Investigations Timothy Pearse would provide relevant, reliable, and helpful expert testimony to a jury. The government intended to call Pearse because of his extensive experience in law enforcement and history of dealing with similar drug cases. He planned to testify about:

1. The manner in which individuals and organizations package, conceal, transport, and distribute methamphetamine;
2. The bulk and street values of the methamphetamine seized in this case;
3. The quantities of methamphetamine that are typically sold and consumed;
4. The amount of methamphetamine seized in this case is consistent with the intent to distribute methamphetamine;

5

5. The common ways in which individuals attempt to avoid detection by law enforcement by using prepaid telephones or fictious names; and

6. The coded language and terminology that is typically used by narcotics traffickers and customers, and the analysis of specific coded language communications on the Defendant's phone in this case, and in other cases involving Defendant.

(Doc. 13 at 4.) Montes argued that because Agent Pearse is the case agent, his involvement would prejudice the outcome. (*Id.* at 13.) As a result, the government now intends to call Agent Daniel Ortiz, who is not a fact witness in the proceeding. (Doc. 42 at 6.) Ortiz has worked for the Border Patrol for over 10 years, part of which involved time with the Department of Homeland Security. (Doc. 42 at 6.) He "has been involved in over 100 narcotics cases," and he is "part of the Las Cruces Strike Force and works with the [DEA] and other agencies to enforce federal narcotics trafficking laws." (*Id.*)

This Court has on numerous occasions allowed agents to testify as experts in drug-related cases. The average jurors might possess some drug knowledge, but it is unlikely that they know the intricacies of the drug industry. For example, they probably do not know what amount is typically held for personal consumption as opposed to distribution. The Court will not allow Agent Ortiz to profile the Defendant in any way, but it will allow him to speak about the drug trade to inform the jury.

### ii. Richard Andrew Barber

At trial, the government intends to call Barber to testify "regarding the tests that he performed on the white crystalline substance seized in this case and that the substance was methamphetamine." (Doc. 14 at 1.) The parties consented to this testimony at the January 14, 2020

hearing, but because the Court granted the Motion to Suppress Physical Evidence, this Motion in Limine to exclude Barber's testimony is denied as moot.

    **b. Motion to Exclude evidence of Alleged Drug Paraphernalia, Gambling Receipts, and other items.**

Montes's next contests admittance of items found in searching his hotel room. (Doc. 35.) At the January 14, 2020 hearing, the government stipulated it only intended to include the methamphetamine, bags, and scale found in the guitar case. Since the Court suppressed the physical evidence found in the case, this Motion in Limine to exclude evidence is denied as moot.

    **c. Motion to Exclude the Nickname "Horse" from the Trial.**

Montes also sought to exclude the words "a.k.a. Horse" from trial and strike it from the indictment. (Doc. 36 at 1.) At the hearing, however, Montes stipulated that he uses the nickname "Horse," but the parties agreed to share a limiting instruction to the jury to avoid any undue prejudice. Therefore, the Court will deny the Motion in Limine to exclude the nickname.

**IV.    Notice of Intent to Use 404 Evidence of Past Criminal Activity**

The government intends to include evidence of drug activity taken from text message exchanges found on Montes's phone from a different matter. (Doc. 47 at 5–6.) Montes was charged in Arizona for possession of drugs and paraphernalia on July 24, 2018. (*Id.* at 3.) Pursuant to a warrant in that case, text messages were extracted from Montes's phone. (*Id.*) These messages imply that he was involved in trafficking activity. (*Id.* at 7.)

According to the Federal Rules of Evidence, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Inclusion requires (1) proper purpose, (2) relevance, (3) probative value that outweighs prejudice,

and potentially (4) a limiting instruction to the jury. *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988); *see also United States v. Henthorn*, 864 F.3d 1241, 1255 (10th Cir. 2017) (applying *Huddleston*). The Tenth Circuit has allowed such evidence when the conduct is sufficiently similar and within a certain period of time. *United States v. Ramirez*, 63 F.3d 937, 943–44 (10th Cir. 1995); *see also United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982) (requiring that the evidence show a "signature quality" to the crime). "[T]o prove identity, evidence of prior illegal acts need not be identical to the crime charged"; it only needs to closely resemble the conduct. *United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir. 1997) (citations omitted). Aspects of this analysis include: "geographic location; the unusual quality of the crime; the skill necessary to commit the acts; or use of a distinctive device." *United States v. Smalls*, 752 F.3d 1227, 1238 (10th Cir. 2014) (citation omitted). This evidence of past criminal activity must be introduced for a proper purpose; it cannot be used to demonstrate criminal disposition. *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001).

The government can show a proper purpose in that the messages include identifying information, such as Montes's nickname, "Horse." These messages can also show knowledge and intent given the similar nature of the offenses. Yet the purpose is more challenging to square with relevance. Evidence is relevant if it has "any tendency to make a fact [of consequence] more or less probable." Fed. R. Evid. 401. This evidence must help show that the purpose for which the evidence is introduced is relevant. This Court recognized that using or selling drugs alone, without some signature instrument or characteristic is not enough to meet this standard. *United States v. Reynoso*, 398 F. Supp. 3d 1115, 1120 (D.N.M. 2019). In *Reynoso*, the Court focused on the defendant's vehicle, which he used in multiple drug transactions. *Id.* at 1121. Here, no such instrument exits, but the government only needs to show that the prior drug crimes involved similar

activity within a close timeframe. *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000). The crime occurred about a year prior to the incident at issue; it involved the same narcotic; and the text messages describe similar activity.

With the last prong, courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In *Reynoso*, this Court held that "the admissibility of subsequent drug-related acts that are highly probative of identity, knowledge, and intent to distribute are not outweighed by any potential prejudice their admission may cause." 398 F. Supp. 3d at 1124. With that, it seems likely that the evidence of Montes's charges in Arizona would not unduly prejudice the Defendant, but the Court could instruct the jury to ensure fairness. Finally, Montes suggests that these text messages constitute hearsay. The Court, however, finds no such problem. Montes's statements could be included as admissions by a party opponent, and the other statements are not submitted for the truth of the matter asserted. As a result, the Rule 404 evidence will be admitted.

**V.**     ***Brady* Request**

Montes filed a *Brady* Request seeking other government documents and information related to his defense. (Doc. 34.) The Supreme Court has interpreted the Due Process Clause of the United States Constitution to require the government to disclose any material evidence to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). That said, *Brady* does not entitle defendants to a fishing expedition through government documents. *Smith v. Sec'y Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995). This standard turns on whether the defendant received a fair trial, not necessarily that every piece of evidence was shared. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

Here, the government contends that it has complied with its *Brady* obligations and has disclosed all relevant material related to Montes's case. The only issue appears to be the extent to which some information related to certain witnesses has been disclosed. The government only needs to address these matters for witnesses it intends to utilize, and it states that it has or will comply as relevant disclosures relate to these individuals.

**THEREFORE,**

**IT IS ORDERED** that Montes's Motion to Disclose Confidential Informants (Doc. 33) is **DENIED**.

**IT IS FURTHER ORDERED** that Montes's Motion in Limine to Exclude Expert Testimony and Request for Daubert Hearings (Doc. 32) is **DENIED** for Agent Daniel Ortiz and **DENIED AS MOOT** for Richard Andrew Barber.

**IT IS FURTHER ORDERED** that Montes's Motion in Limine to Exclude Evidence of Alleged Drug Paraphernalia (Doc. 35) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Montes's Motion in Limine to Exclude The Words "A.K.A. Horse" (Doc. 36) is **DENIED**.

**IT IS FURTHER ORDERED** that Rule 404 evidence of past criminal activity (Doc. 47) will be **ADMITTED**.

**IT IS FURTHER ORDERED** that the government will comply with its *Brady* obligations (Doc. 34).

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**